UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PRIMAVERA INVESTORS,

    Plaintiff,

v.                                    CASE NO: 8:04-cv-919-T-23EAJ

LIQUIDMETAL TECHNOLOGIES, INC.,
et. al.,

    Defendants.
_____/

**ORDER**

On behalf of purchasers of common shares offered from May 21, 2002, to May 13, 2004, (the "class period") the lead plaintiffs assert claims (Doc. 41) against Liquidmetal Technologies, Inc., ("Liquidmetal") and John and James Kang (the "individual defendants") under sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Securities and Exchange ("SEC") Rule 10b-5. The amended complaint alleges that the defendants violated the Securities Act by knowingly including false and misleading statements in Liquidmetal's May 21, 2002, Initial Public Offering ("IPO") prospectus (Doc. 41 at 18-23). The amended complaint further alleges that the defendants violated the Exchange Act by releasing false and misleading statements throughout the class period with the scienter required under the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b), Federal Rules of Civil Procedure. The

defendants move (Doc. 51) to dismiss the amended complaint for failure to state a claim and for failure to satisfy the pleading requirements of the Federal Rules of Civil Procedure and the PSLRA.

The court has carefully considered the ninety-eight page consolidated amended class action complaint, the parties' exhaustive legal memoranda, and the pertinent legal authorities. In evaluating the sufficiency of a complaint, a court "must accept the well-pleaded facts as true and resolve them in the light most favorable to the plaintiff." Beck v. Deloitte & Touche, 144 F.3d 732 (11th Cir. 1998) (citing St. Joseph Hospital Inc. v. Hospital Corp. of Am., 795 F.2d 948 (11th Cir. 1986)). Mere conclusory allegations provide no support for the sufficiency of a complaint. South Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996). Generally, under the notice pleading standard of the Federal Rules of Civil Procedure, a motion to dismiss should be granted only if a plaintiff can prove no set of facts in support of his claim. Harris v. Procter & Gamble Cellulose Co., 73 F.3d 321, 324 (11th Cir. 1996) (quoting Mann v. Adams Realty Co., Inc., 556 F.2d 288, 293 (5th Cir. 1977)). Of course, pursuant to Rule 9(b), Federal Rules of Civil Procedure, a complaint must plead fraud with particularity.

Liquidmetal is a materials technology company that purports to develop and commercialize various products and components made from unique amorphous alloys (Doc. 41 at 6). The amended complaint alleges that Liquidmetal's founders, the individual defendants, held controlling positions at Liquidmetal during the class period (Doc. 41 at 14-15). John Kang served as Liquidmetal's president, chairman of the board, principal executive officer, and chief executive officer during the class period

(Doc. 41 at 14).  James Kang, John Kang's brother, served as  chairman of the board (Doc. 41 at 15).  Both John and James Kang served as a director of Liquidmetal (Doc. 41 at 14-15).

Seeking to raise capital through an IPO of 5,000,000 common shares at $15.00 per share, the defendants issued an IPO prospectus on May 21, 2002 (Doc. 41 at 7).  The prospectus, signed by both individual defendants, stated that the officers and directors were prohibited by a lock-up agreement from selling any shares of Liquidmetal for 180 days after the IPO (Doc. 41 at 19).  The prospectus disclosed that John Kang beneficially owned 19,308,785 common shares of Liquidmetal, approximately 51.8% of Liquidmetal's outstanding shares (Doc. 41 at 19).

The plaintiffs allege that the prospectus failed to disclose that in February, 2002, three months prior to the IPO offering, John Kang secretly agreed to sell 285,715 of his Liquidmetal shares to Growell Metal, Inc., ("Growell") a licensee of Liquidmetal's technology, at a 30% discount from the IPO price (Doc. 41 at 7-8).  To satisfy this agreement, John Kang allegedly violated the lock-up agreement in August, 2002, by indirectly purchasing Liquidmetal shares to effect the 30% discount promised to Growell (Doc. 41 at 20-21).  Upon learning of the defendants' failure to disclose John Kang's agreement to sell his shares to Growell in violation of the lock-up agreement, Deloitte & Touche, LLP, ("Deloitte") resigned as Liquidmetal's independent auditor (Doc. 41 at 73). The plaintiffs allege that, because of Deloitte's resignation, Liquidmetal untimely filed both its Form 10-K for fiscal year 2003 and Form 10-Q for the  first quarter of 2004,

which caused the de-listing of Liquidmetal's common shares from NASDAQ (Doc. 41 at 74-75).

The amended complaint further alleges that the IPO prospectus issued by the defendants "contained false historical financial data for the fiscal year ended December 31, 2001" (Doc. 41 at 21). The defendants allegedly understated Liquidmetal's general and administrative expenses, compensation expenses, and total operating expenses (Doc. 41 at 16-18). Specifically, the plaintiffs allege that (1) Liquidmetal's general and administrative expenses were $5,239,000, not $4,301,000 as reported in the prospectus; (2) Liquidmetal's total operating expenses were $6,965,000, not $6,027,000 as reported in the prospectus; (3) Liquidmetal's loss before taxes, minority interest, and discounted operations was $6,102,000, not $5,164,000 as reported in the prospectus; (4) Liquidmetal's net loss was $24,024,000, not $23,086,000 as reported in the prospectus; and (5) Liquidmetal's loss per share from continuing operations was $0.18, not $0.15 as reported in the prospectus. By failing to properly account for stock option compensation expenses in violation of generally accepted accounting principles ("GAAP"), the defendants allegedly overstated by 20% Liquidmetal's earnings per share from continuing operations (Doc. 41 at 16).

The plaintiffs also allege that during the class period the defendants issued numerous false and misleading public statements (via press releases, corporate filings, and conference calls) touting Liquidmetal's production capabilities, commercial viability, and improving financial condition (Doc. 41 at 37-56). The plaintiffs identify with precision the allegedly false and misleading statements and the reason the statements

are false. The amended complaint alleges that each individual defendant knew, or was severely reckless in not knowing, the falsity of public statements that celebrated Liquidmetal's ongoing manufacturing and commercial success.

For example, the defendants represented that Liquidmetal's bulk alloys were stronger and more elastic than other conventional metals. The plaintiffs claim that the defendants' representations about the strength and performance of Liquidmetal's bulk alloys were materially false because the defendants knew that Liquidmetal was incapable, due to substantial manufacturing problems, of producing a standardized test sample to permit accurate comparisons to other metallic materials under "universally recognized" guidelines (Doc. 41 at 37). Likewise, the defendants repeatedly represented that Liquidmetal was capable of maintaining a production-cycle time of forty-five seconds. The plaintiffs allege that the defendant's representations about Liquidmetal's production-cycle time of forty-five seconds were materially false because the defendants knew that Liquidmetal's true production-cycle time was in fact one hour (Doc. 41 at 34-35). The plaintiffs also allege that the defendants knowingly and falsely claimed that Liquidmetal had been, or was on the verge of, shipping commercial quantities of its product to customers.

The amended complaint alleges that Liquidmetal's manufacturing facilities suffered debilitating problems, known or recklessly disregarded by the defendants and allegedly stemming from the company's reliance on inadequate equipment purchased from Dongyang, Liquidmetal's majority-owned subsidiary. As a result, Liquidmetal was (1) unable to produce sufficient samples of bulk alloy to allow for standardized strength

testing or product demonstration, (2) unable to produce large quantities of finished alloy products without significant defects such as cracking, breaking, or bubbling, and (3) unable to achieve a production-cycle time of less than one hour. The complaint alleges that the defendants both failed to disclose these many shortcomings and deliberately misled investors about Liquidmetal's prospects for profit.

## Securities Act Claims

To assert a violation of section 11 of the Securities Act, a plaintiff must demonstrate "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." Kaplan v. Rose, 49 F.3d 1363, 1371 (9th Cir. 1994), cert. denied, 516 U.S. 810 (1995). The plaintiffs claim the defendants violated Section 11 by misrepresenting Liquidmetal's fiscal year 2001 financial data in the IPO prospectus and by failing to disclose John Kang's agreement to sell personal shares of Liquidmetal stock to Growell in violation of the lock-up agreement. The defendants argue that the plaintiffs' Securities Act claims fail to state a claim because (1) the offering "bespeaks caution" and renders any misrepresentation in the prospectus immaterial as a matter of law, (2) Liquidmetal had no duty to disclose the sale of Liquidmetal stock from John Kang to Growell, and (3) no reasonable investor would consider the additional $1 million loss for fiscal year 2001 important to his investment decision (Doc. 51).

"When an offering document's projections are accompanied by meaningful cautionary statements and specific warnings of the risks involved, that language may be

sufficient to render the alleged omissions or misrepresentations immaterial as a matter of law." Saltzberg v. TM Sterling/Austin Associates, Ltd., 45 F.3d 399, 400 (11th Cir. 1995). An offering that effectively "bespeaks caution" protects a defendant from liability for a forward-looking statement if the cautionary language identifies important factors that could cause actual results to differ materially from those anticipated in the forward-looking statement. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1276 n.7 (11th Cir. 1999); EP Medsystems, Inc. v. Echobath, Inc., 235 F.3d 865, 874 (3d Cir. 2000) ("[b]y its terms, the 'bespeaks caution' doctrine . . . is directed only to forward-looking statements.").

The amended complaint alleges that the prospectus contained numerous "false historical statements for the year ended 2001" (Doc. 41 at 13). Specifically, the plaintiffs allege that the historical financial data contained in the prospectus was false due to the defendants' failure to properly account for stock option compensation expenses in violation of GAAP. Accordingly, even assuming the statements effectively "bespeak caution" about the future, a defendants' cautionary warnings about a future risk cannot render immaterial an otherwise false historical financial statement. EP Medsystems, Inc. v. Echobath, Inc., 235 F.3d 865, 874 (3d Cir. 2000).

Also, a defendant remains liable if the plaintiff shows that the defendant "knew at the time of the statement of false and misleading content and thus lacked a reasonable basis for making the statement." Harris v. Ivax Co, 182 F.3d 799, 803 (11th Cir. 1999). The amended complaint alleges that, despite knowing of the personal stock sale and discount guarantee from John Kang to Growell, the defendants touted the lock-up

agreement prohibiting the officers and directors from selling Liquidmetal shares for 180 days after the IPO (Doc. 41 at 19). The cautionary language in the prospectus warned about the risk of investment but failed to notify the plaintiffs of the eventuality that the defendants were perpetrating a fraud. <u>In re Sterling Foster & Co., Inc., Securities Litigation</u>, 222 F. Supp. 2d 216, 249 (E.D. NY. 2002) (cautionary language in a prospectus warns a reasonable investor of the risk associated with investment, not of the possibility of fraud); <u>In re Colonial Limited Partnership Litigation</u>, 854 F. Supp. 64, 84 (D. Conn. 1994) ("While the cautionary language contained in the [prospectus] may have suggested that the investment was risky, it did not warn the plaintiffs of the possibility that the whole scheme was fraudulent."). Because the amended complaint alleges the defendants knew specific statements in the prospectus were false and misleading, the defendants' cautionary language fails to provide a defense.

The defendants also argue that, because Liquidmetal was under no duty to disclose the pre-IPO agreement between John Kang and Growell, the defendants' omission of the agreement is immaterial (Doc. 51 at 11). Further, the defendants argue that, as a matter of law, no reasonable investor would consider the prospectus's financial inaccuracy important to his investment decision. A statement or omission qualifies as "material" if full and truthful disclosure of the facts would have been "viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." <u>Oxford Asset Management, Ltd. v. Jaharis</u>, 297 F.3d 1182 (11th Cir. 2002) (citing <u>Basic Incorporated v. Levinson</u>, 485 U.S. 224 (1988)) (internal quotes omitted).

A statement or omission is immaterial only if reasonable minds cannot differ in finding that the statement or omission lacks importance. Oxford Asset Management, Ltd. v. Jaharis, 297 F.3d 1182 (11th Cir. 2002). Any reasonable investor contemplating investing during a company's IPO would want to know whether the company was overstating its financial earnings in violation of GAAP. Likewise, any reasonable investor would appreciate learning of an officer's preexisting obligation to violate the very lock-up agreement touted to investors in the IPO. Because reasonable minds can differ as to whether the defendants' misstatements and omissions rendered other affirmative statements in the prospectus misleading, the statements and omissions alleged in the plaintiffs' Securities Act claims are not immaterial as a matter of law.

Finally, a complaint satisfies the particularity requirement of Rule 9(b) for a federal securities claim "if the complaint sets forth [which] statements or omissions were made in [which] documents or oral representations; the time and place of the statements or omissions; who made the statements; the content of the statement and the manner in which they misled the plaintiffs; and what the defendant 'obtained as a consequence of the fraud.'" Druskin v. Answerthink, Inc., 299 F. Supp. 2d 1307, 1321 (S.D. Fla. 2004) (citing Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997)). The amended complaint alleges misstatements and omissions in Liquidmetal's prospectus and accompanying financial statements, provides the exact statements alleged to be false, and offers the reason the statements and omissions would mislead the plaintiffs, resulting in a successful IPO for Liquidmetal. Accordingly,

the amended complaint states a claim for relief for a violation of the Securities Act with the particularity required by Rule 9(b), Federal Rules of Civil Procedure.

### Exchange Act Claims

To assert a violation of section 10(b) of the Exchange Act and Rule 10b-5, the plaintiff must show that the defendant with scienter misstated or omitted a material fact and that the plaintiff relied on the misstatement or omission to the plaintiff's detriment. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1281 (11th Cir. 1999). Further, the PSLRA requires that a complaint state with particularity facts giving rise to a strong inference that each separate defendant acted with scienter in each act or omission alleged. 15 U.S.C. § 78u 4(b)(2); see also Druskin v. Answerthink, Inc., 299 F. Supp. 2d 1307, 1322 (S.D. Fla. 2004).

The amended complaint alleges that, during the class period and while controlled by the individual defendants, Liquidmetal issued numerous false and misleading public statements in press releases, corporate filings, and conference calls. The plaintiffs support their allegations with specific facts derived from confidential witnesses, internal Liquidmetal documents, and the defendants' admissions and conduct. Satisfying the particularity requirement for pleading an Exchange Act claim, the plaintiffs identify with sufficient specificity the allegedly false and misleading statements issued by the defendants during the class period.

The defendants argue that the plaintiffs' amended complaint insufficiently alleges that the defendants possessed the requisite scienter when releasing a false statement. A plaintiff meets the pleading requirement for scienter under the PSLRA by showing

"severe recklessness." Druskin v. Answerthink, Inc., 299 F. Supp. 2d 1307, 1323 (S.D. Fla. 2004). The Eleventh Circuit describes severe recklessness as "limited to those highly unreasonable omissions or misrepresentations," known to the defendant or so obvious that the defendant must have been aware, "that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers . . . ." McDonald v. Alan Bush Brokerage Co., 863 F.2d 809, 814 (11th Cir. 1989). The plaintiffs may aggregate facts to imply scienter as to each defendant but may not rely on group pleading. Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1017 (11th Cir. 2004).

The amended complaint provides sufficient allegations to strongly imply that each of the individual defendants acted with severe recklessness as to the falsity of Liquidmetal's public statements. Each of the individual defendants held a controlling position during the class period, received advanced copies of Liquidmetal's reports, corporate filings, and press releases, and personally participated in conference calls to analysts and investors (Doc. 41 at 15). By virtue of their positions, both John and James Kang enjoyed both unfettered access to internal adverse information about Liquidmetal and ample opportunity to prevent the release of any misleading statement.

The amended complaint also alleges facts sufficient to support the strong inference that the individual defendants possessed actual knowledge of the falsity of statements issued by Liquidmetal during the class period. Former employees cited in the complaint provide specific and detailed information that John Kang knew the falsity of his public representations about alloy strength. These confidential witnesses claim,

based on personal knowledge, that John Kang was a "hands-on" CEO, involved in the "nuts and bolts" of Liquidmetal operation, including weekly meetings with Liquidmetal executives to discuss the company's inability to develop testable alloy samples (Doc. 41 at 14, 36). John Kang allegedly directed one employee to convince potential Liquidmetal customers that "they did not need [testable alloy] samples" to order product (Doc. 41 at 36).

The plaintiffs further allege that John Kang regularly "yelled and screamed" at Liquidmetal personnel about manufacturing problems at the company's South Korean facility (Doc. 41 at 30-31) and led weekly meetings in which Liquidmetal executives discussed the company's manufacturing problems (Doc. 41 at 36). The amended complaint further alleges that, in response to numerous production problems, the defendants conducted an in-depth analysis revealing that Liquidmetal's manufacturing facilities were fundamentally flawed and operated too slowly to meet the company's known production needs (Doc. 41 at 31-32). For example, the defendants allegedly learned that the vacuum die-casting machines, integral to Liquidmetal's productions, proved too small and operated too slowly to produce materials in commercial quantity (Doc. 41 at 32). Despite this knowledge, the defendants persistently boasted of a state-of-the-art, "high volume manufacturing environment" with "enormous potential" and announced that the company was "gaining momentum" (Doc. 41 at 46-50). These allegations sufficiently and strongly imply that the defendants actually knew Liquidmetal's public statements were false or misleading.

Finally, the defendants argue that their alleged Exchange Act violations are forward-looking statements protected by the safe harbor provision of the PSLRA, which

protects a defendant from liability for a "forward-looking" statement if the statement includes meaningful cautionary language "identifying important factors that could cause actual results to differ materially from those in the 'forward-looking' statement.'" 15 U.S.C. §§ 77z-2(c)(1)(A)(I) & 78u-5(c)(1)(A)(I).  A defendant remains liable, even for a forward-looking statement, if the plaintiff shows that the defendant "knew at the time of the statement of false and misleading content and thus lacked a reasonable basis for making the statement."  In re Enron, 235 F. Supp. 2d 549, 576 (S.D. Tex. 2002) (citing Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1213 (1st Cir.1996).

Although the amended complaint contains allegations based on "forward-looking" statements, including projections of revenue, business objectives, and future economic performance, the plaintiffs sufficiently allege that no reasonable basis existed for the forward-looking statements issued during the class period.  Further, the amended complaint alleges actual knowledge of the falsity of the statements.  Accordingly, the amended complaint satisfactorily pleads facts to counter the presumption that the defendants' forward-looking statements are not actionable.

Accordingly, the amended complaint (Doc. 41) sufficiently pleads violations of the Securities Act and the Exchange Act against the defendants  The defendants' motion to dismiss (Doc. 51) is **DENIED**.

ORDERED in Tampa, Florida, on December 2, 2005.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE